# In the United States Court of Federal Claims

No. 19-1874
(Filed: 10 April 2020*)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| AMERICAN RELOCATION CONNECTIONS, LLC, dba ARC RELOCATION, LLC, | Post-award bid protest; best-value trade off; FAR Subpart 8.4; RCFC 52.1; judgment on the administrative record; equally-weighted subfactors. |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant, | |
| and | |
| RELIANCE RELOCATION SERVICES, INC., dba RELO DIRECT, INC., | |
| Defendant-Intervenor. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*W. Barron A. Avery*, of Baker & Hostetler, LLP, with whom was *Brian V. Johnson*, both of Washington, DC, for plaintiff.

*Shari A. Rose*, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Douglas K. Mickle*, Assistant Director, all of Washington, DC, for defendant.

*William F. Savarino*, of Cordatis LLP, with whom were *John J. O'Brien* and *Joshua Schnell*, all of Arlington, VA, for defendant-intervenor.

## OPINION AND ORDER

---

\* This opinion was originally filed under seal on 8 April 2020 pursuant to the protective order in this case.  The Court provided the parties two days to review this opinion for any proprietary, confidential, or other protected information, and submit to the Court proposed redactions, if any, before the opinion is released for publication.  Plaintiff and intervenor proposed minimal redactions.  The Court accepts plaintiff's and intervenor's redactions, with redacted language replaced as follows:  [XXX].

**HOLTE, Judge**.

Plaintiff, American Relocation Connections, LLC, doing business as ARC Relocation, LLC ("plaintiff") protests the decision of the U.S. Department of Homeland Security, Customs and Border Protection ("CBP" or "Agency") to award an employee relocation services contract to defendant-intervenor, Reliance Relocation Services, Inc., doing business as RELO Direct, Inc. ("intervenor" or "awardee").  Pending before the Court is:  (1) plaintiff's motion for judgment on the administrative record; (2) the government's cross-motion for judgment on the administrative record; (3) intervenor's cross-motion for judgment on the administrative record; (4) plaintiff's motion to withdraw its motion for preliminary injunction; and (5) plaintiff's motion to supplement the administrative record.  For the following reasons, the Court:  (1) **DENIES** plaintiff's motion for judgment on the administrative record; (2) **GRANTS** the government's cross-motion for judgment on the administrative record; (3) **GRANTS** intervenor's cross-motion for judgment on the administrative record; (4) **DENIES AS MOOT** plaintiff's motion to withdraw its motion for preliminary injunction; and (5) **DENIES AS MOOT** plaintiff's motion to supplement the administrative record.

## I.    Background

### A.  The Solicitation

On 19 January 2018, CBP issued Request for Quotation ("RFQ" or the "Solicitation") No. 70B05C18Q00000021 for the procurement of employee relocation services. Admin. Record at 107, ECF No. 30 ("AR").  The procurement was limited to holders of  General Services Administration ("GSA") Schedule 48 contracts.[1]  *Id.* at 8.  "The Government contemplate[d] award of a firm-fixed price Blanket Purchase Agreement ["BPA"] resulting from this solicitation." *Id.* at 125.  The RFQ provided for a 12-month base period with four 12-month options. *Id.* at 109.  The government would award the BPA "to the responsible Offeror whose quote conforming to the solicitation will be most advantageous to the Government, price and other factors considered." *Id.* at 128.

The RFQ listed three factors, "in descending order of importance," the government would use to evaluate offers:  (1) technical capability; (2) past performance; and (3) price.  *Id.*  The first factor, technical capability, comprised five sub-factors "of equal weight:"  (A) "Home Sale Services;" (B) "Move Management Services;" (C) "Financial Capability and Financial Resources;" (D) "Property Management and Internal Key Controls;" and (E) "Reporting & Online Capabilities and Security."  AR at 128.

The RFQ provided "evaluation will be based on a Best Value trade-off process." *Id.* Specifically:

> When combined, Technical Capability and Past Performance are more important than  Price.   As  the  technical  evaluation  of  quotes  approaches  equality,  price

---

[1] Plaintiff was "the incumbent contractor on Agency Contract No. HSB1014A00027 . . . to provide relocation and related services to employees of the CBP." Pl.'s Mot. for J. on the Admin. Record at 3, ECF No. 33.  That contract was set to expire fiscal year 2017.  *See* AR at 3.

becomes more important in making the award determination.  The importance of price will increase as the difference in technical ratings (Technical Capability and Past Performance) between the Offerors decreases.  In the event that two or more quotes are determined not to have any substantial technical differences (i.e. are technically equivalent), award may be made to the lowest priced quote.  It should be noted that award may be made to other than the lowest price quote if the Government determines that a price premium is warranted due to technical merit. The Government may also award to other than the highest technically rated quote if the Government determines that a price premium is not warranted.

*Id.*

## B.  Contract Evaluation and Award

Four companies holding GSA Schedule 48 contracts submitted quotes, but CBP excluded two offerors from the competitive range due to non-compliance and non-responsiveness.  AR at 471.  The Agency selected a competitive range comprising plaintiff and intervenor.  *Id.* at 474. "After the Technical Evaluation Team completed its evaluation of the technical quote, a determination was made that discussions were necessary."  *Id.* at 1038.  On 1 March 2019, CBP informed both plaintiff and awardee it "has decided to hold discussions for this acquisition in accordance with FAR [Federal Acquisition Regulation] 15.306(d) with offerors in the competitive range."  AR at 476, 484.  By opening discussions, CBP gave plaintiff and intervenor "the opportunity to address, explain or alter identified aspects of [their] quote[s] through discussions in order to maxim[ize] the Government's ability to obtain best value . . . ."  *Id.*

Following written discussions, on 22 March 2019, plaintiff submitted its final revised quote to CBP, and on 25 March 2019, intervenor submitted its final revised quote.  *See* AR at 861, 926.

Once the offerors submitted their final quotes, the Technical Evaluation Team ("TET") completed its Final Technical Evaluation Report.  *See* AR Tab 74.  The TET used the following adjectival ratings to evaluate the proposals under Factor 1:

| EVALUATION RATINGS<br>FACTOR 1 (TECHNICAL CAPABILITY) | |
|---|---|
| Superior | The quote demonstrates excellent understanding of requirements and approach that significantly exceeds performance or capability standards. |
| Good | The quote demonstrates good understanding of requirements and approach that exceeds performance or capability standards. |
| Satisfactory | The quote demonstrates minimally acceptable understanding of requirements and approach that meets performance or capability standards. |
| Marginal | The quote demonstrates shallow understanding of requirements and approach that only marginally meets performance or capability standards. |
| Unsatisfactory | The quote fails to meet the requirement; has one or more deficiencies for which correction would require a major revision or redirection of the quote. |

*Id.* at 1042.  The TET further used the following terms with the adjectival ratings to evaluate the proposals:  Significant Strength; Strength; Weakness; Significant Weakness; and Deficiency.  *Id.*

A "Significant Strength" means "an aspect of the quote which provides significant benefit to the Government." *Id.* A "Strength" means "an aspect of the quote which provides benefit to the Government." *Id.* A "Weakness" means "a flaw in the quote that decreases the Government's confidence in the Offeror's ability to successfully perform the requirements of the contract." *Id.* A "Significant Weakness" means "a flaw in the quote that appreciably decreases the Government's confidence in the Offeror's ability to successfully perform the requirements of the contract." AR at 1042. Lastly, a "Deficiency" refers to "a material failure of a quote to meet a Government requirement or a combination of significant weaknesses in the quote that increases the risk of unsuccessful contract performance to an unacceptable level." *Id.*

The TET similarly used the following adjectival ratings to evaluate the proposals under Factor 2, Past Performance:

| Rating | Description |
|---|---|
| HIGH CONFIDENCE | Based on the Offeror's performance record, the Government has high confidence the Offeror will successfully perform the required effort. |
| SATISFACTORY CONFIDENCE | Based on the Offeror's performance record, the Government has confidence the Offeror will successfully perform the required effort. |
| LIMITED CONFIDENCE | Based on the Offeror's performance record, the Government has substantial doubt the Offeror will successfully perform the required effort. |
| NO CONFIDENCE | Based on the Offeror's performance record, the Government no confidence the Offeror will be able to successfully perform the required effort. |
| NEUTRAL | IAW FAR 15.305(a)(2) (iv), the Offeror does not have record of relevant past performance or information is not available. The Offeror will not be evaluated favorably or unfavorably. |

*Id.* at 1043.

Using these ratings, the TET gave plaintiff and intervenor the following ratings as its final evaluation:

| EVALUATION FACTORS | ARC | RELO DIRECT |
|---|---|---|
| FACTOR 1 –TECHNICAL CAPABILITY | GOOD | GOOD |
| Sub-factor A- Home Sale Service | Superior | Superior |
| Sub-factor B- Move Management Service | Good | Good |
| Sub-factor C-Financial Capability and Resources | Good | Superior |
| Sub-factor D- Property Management and Internal Controls | Good | Good |
| Sub-factor E-Reporting &Online Capabilities and Security | Superior | Good |
| FACTOR 2- PAST PERFORMANCE | Satisfactory Confidence | Satisfactory Confidence |

- 4 -

*Id.* at 1044. The TET report thoroughly analyzed the strengths and weaknesses of plaintiff's and intervenor's proposals to explain the adjectival ratings given to each. *See* AR at 1044–62.

The Contracting Officer ("CO") additionally conducted a price analysis of plaintiff's and intervenor's final price quotes to determine if the quotes were fair and reasonable. *See* AR at 1063–64. The CO compared plaintiff's and intervenor's proposed prices to their GSA Schedule 48 rates. *Id.* at 1064. Since each offerors' proposed rates did not exceed their GSA Schedule rates, the CO concluded each offerors' price was fair and reasonable. *Id.*

As documented in the Source Selection Authority Award Decision, the Source Selection Authority ("SSA") reviewed the TET report and "concur[red] with it in all respects." *Id.* at 1081. The SSA, however, as the procurement required, "performed an independent analysis of the information provided in order to accomplish an integrated assessment of the Technical and Price Evaluation Team findings and conducted a comparative assessment of the offeror's [sic] proposals by comparing the strengths and benefits offered to the government." *Id.* For the offerors' ratings under Factor 1 Technical Capability, the SSA summarized the TET's findings. For subfactor A, plaintiff had a "slight advantage" because it "proposed its [XXX] of facilitating open market home sale transactions compared to [intervenor's] [XXX]" and "[w]ith respect to managing sub-operations, [plaintiff] had a slight advantage by being more expansive. *Id.* at 1082. The proposals "were technically equal in terms of benefits to the Agency for sub-factor B." AR at 1082. Intervenor "was superior in sub-factor C as [intervenor's] approach showed a substantial comparative advantage over [plaintiff] regarding financial capability and resources to fund aspects of the relocation services requirement that would require financial outlays from the contractor." *Id.* The proposals were similarly "technically equal" for subfactor D. *Id.* Finally, plaintiff "was superior in sub-factor E as [plaintiff] proposed relatively higher number mechanisms for securing [Personally Identifiable Information] data when compared to [intervenor's] approach under the sub-factor." *Id.* After summarizing these strengths, the SSA concluded for Factor 1, the proposals were "essentially technically equal in terms of benefits to the government because no combination of strengths or benefits proposed surpassed the other." *Id.* "Although [plaintiff] had a slight advantage in Subfactor A and was superior in Subfactor E, the Government views the enhanced benefits associated with [intervenor's] financial capability (Subfactor C) as essentially equal to [plaintiff's] advantages in terms of benefit to the government." *Id.*

Regarding Factor 2 Past Performance, the SSA concurred in the TET evaluation and found both proposals to be "satisfactory." AR at 1082. Plaintiff's past performance was "superior for having one fully relevant award -the current CBP contract," and plaintiff had a high quality of performance based on previously submitted past performance questionnaires. *Id.* [XXX] The SSA concluded for this factor, "[a]lthough [plaintiff's] past performance is superior, both offerors have demonstrated . . . they have the past performance in order to meet CBP's technical requirements and successfully perform this requirement." *Id.*

Lastly, for Factor 3 Price, the Agency did not give adjectival ratings. *Id.* The SSA relied on the price reasonableness determination that "[b]oth offeror's price proposals were below their

GSA schedule rates and determined to be fair and reasonable," but noted intervenor's "price was $900,712.50 lower than [plaintiff's]." *Id.*

Overall, the SSA determined intervenor's proposal offered the best value to the government, in light of plaintiff's price premium of $900,712.50, or 15%:

> After accomplishing the integrated assessment, considering the established and stated order of importance for the evaluation factors in accordance with the RFQ, it is my determination that [intervenor's] proposal offers the best value for fulfilling the Government's requirements.   [Intervenor's] overall price is lower than [plaintiff's] overall price, and I do not find that [plaintiff's] more favorable past performance merits a price premium of $900,712.50.   [Plaintiff's] proposal has not demonstrated any number of strengths or benefits (including better past performance) that warrant the Government paying this price premium estimated to be 15%.

> [Intervenor's] proposal yields confidence that they will successfully perform the work under the contract.   I have determined that [intervenor's] proposal is a fair and reasonable price and awarding the Blanket Purchase Agreement to them is in the best interest of the Government.

AR at 1082–83.

On 15 August 2019, the Agency notified intervenor it was awarded the BPA. *Id.* at 1084. The next day, on 16 August 2019, the Agency notified plaintiff it awarded the contract to intervenor. *Id.* at 1104. Plaintiff requested a debriefing the same day. *Id.* at 1136.

On 21 August 2019, the Agency sent plaintiff a brief explanation of its award decision. *See* AR Tab 81. The brief explanation summarized the Agency's evaluation of plaintiff's proposal and provided the SSA's rationale for the award:

> The Source Selection Authority did not find that [plaintiff's] superior past performance justifies an almost 15% price premium, given that [intervenor's] past performance was Satisfactory and demonstrates that [intervenor] can successfully perform this effort.   Further, both offerors were technically equal in terms of benefits to the Government with respect to Factor 1 – the most important factor.

*Id.* at 1117.

## C.  Government Accountability Office Protest

On 23 August 2019, ARC filed a protest with the Government Accountability Office ("GAO"), along with a supplemental protest filed on 30 August 2019.[2]  *See* AR at 1131–32.  In that protest, plaintiff argued the Agency:

> (1) imposed unstated evaluation criteria and treated the protester's and the awardee's quotations disparately under the financial capability and resources subfactor; (2) unreasonably evaluated the protester's technical quotation under the property management subfactor by failing to assign a significant strength for the protester's incumbent experience; (3) failed to conduct meaningful discussions; and (4) made an unreasonable selection decision by deviating from the stated weighting scheme for the five subfactors under the technical capability factor and conducting a flawed best-value tradeoff.

*Id.* at 2270.  On 22 November 2019, GAO denied plaintiff's protest.  *See id.* Tab 106.  GAO issued the decision publicly on 3 December 2019.  *See id.* at 1133.

### D.  This Protest

Plaintiff filed its complaint on 11 December 2019, along with a motion for protective order, motion for leave to file its complaint under seal, and motion for preliminary injunction.  *See* Compl., ECF No. 1; Pl.'s Mot. for Protective Order, ECF No. 5; Pl.'s Mot. for Leave to File Compl. Under Seal, ECF No. 6; Pl.'s Mot. for Prelim. Inj., ECF No. 7.  On 13 December 2019, intervenor filed its motion to intervene in this protest, and the Court granted the motion the same day.  *See* Mot. to Intervene, ECF No. 15; Order, ECF No. 17.  The parties filed a joint status report proposing a schedule for proceedings in this case on 16 December 2019.  *See* Joint Status Report & Joint Proposed Schedule, ECF No. 18.  The Court held a telephonic status conference to discuss the proposed schedule.  *See* Order, ECF No. 14.  Pursuant to discussions regarding contents of the protective order, following the status conference, the parties filed a joint motion for protective order on 19 December 2019.  *See* Joint Mot. for Protective Order, ECF No. 19. The Court granted the motion for protective order on 20 December 2019.  *See* Protective Order, ECF No. 21.  The same day, the Court granted plaintiff's motion for leave to file its complaint under seal.  *See* Order, ECF No. 20.  In the same order, the Court found plaintiff's motion for preliminary injunction was moot because the government agreed to voluntarily stay contract performance pending the Court's resolution of this protest.  *Id.*  For the same reason, on 9 January 2020, plaintiff moved to withdraw its motion for preliminary injunction.  *See* Mot. to Withdraw Prelim. Inj., ECF No. 29.

On 10 January 2020, the government filed the administrative record.  *See* AR.  On 14 January 2020, the government filed an unopposed motion for leave to correct the administrative record, which the Court granted on 16 January 2020.  *See* Mot. to Correct the Admin. Record,

---

[2] Plaintiff filed a pre-award bid protest with the GAO concerning this same procurement on 12 February 2018.  AR at 1066.  On 18 May 2018, GAO dismissed the protest.  *Id.*  Plaintiff then filed a protest in this Court on 2 July 2018, which this Court denied on 24 September 2018.  *Id.*; *see also Am. Relocation Connections, LLC v. United States*, 139 Fed. Cl. 747 (2018).  On 26 November 2018, the Agency learned plaintiff appealed this Court's 24 September 2018 decision to the Federal Circuit.  AR at 1066.  On 11 October 2019, in an unpublished opinion, the Federal Circuit affirmed this Court's denial of plaintiff's pre-award bid protest.  *See Am. Relocation Connections, LLC v. United States*, 789 F. App'x 221 (Fed. Cir. 2019).

ECF No. 31; Order, ECF No. 32.  On 24 January 2020, plaintiff filed its motion for judgment on the administrative record and a motion to supplement the administrative record.  *See* Pl.'s Mot. for J. on the Admin. Record, ECF No. 33 ("Pl.'s MJAR"); Pl.'s Mot. to Suppl. Admin. Record, ECF No. 34 ("Pl.'s Mot. to Suppl. AR").  The government and intervenor filed their respective responses to plaintiff's motion and cross-motions for judgment on the administrative record on 7 February 2020.  *See* Def.-Intervenor's Opp'n to Pl.'s MJAR & Cross-Mot. for J. on the Admin. Record, ECF No. 35 ("Intervenor's MJAR"); Def.'s Cross-Mot. for J. on the Admin. Record & Resp. to Pl.'s MJAR, ECF No. 36 ("Def.'s MJAR").  On 21 February 2020, plaintiff filed its reply to the government's and intervenor's responses and its response to their cross-motions.  *See* Pl.'s Reply & Resp. to Gov't's & Intervenor's Resps. & Cross-Mots. for J. on the Admin. Record, ECF No. 37.  The government and intervenor filed their respective replies in support of their cross-motions on 6 March 2020.  *See* Def.-Intervenor's Reply to Pl.'s Resp. to Defs.' Cross-Mots. for J. on the Admin. Record, ECF No. 38; Def.'s Reply in Supp. of its Cross-Mot. for J. on the Admin. Record, ECF No. 39.  The Court held oral argument on the cross-motions for judgment on the administrative record on 12 March 2020.  *See* Order, ECF No. 22.

## II.    Discussion

### A.  Legal Standards

#### 1.   Bid Protest Jurisdiction and APA Standard of Review

The Tucker Act provides this Court jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of a statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  In rendering such judgment, this Court "review[s] the agency's decision pursuant to the standards set forth in section 706 of title 5."  *Id.* § 1491(b)(4).  "Among the various [Administrative Procedure Act] standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. §706(2)(A):  a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  *Banknote Corp. of Am. v. United* States, 365 F.3d 1345, 1350 (Fed. Cir. 2004) (citing *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057–58 (Fed. Cir. 2000)).  Under this standard, "a court is not to substitute its judgment for that of the agency."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).  "The arbitrary and capricious standard applicable here is highly deferential," and "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors."  *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)).

#### 2.   Judgment on the Administrative Record in a Bid Protest

Rule 52.1(c) of the Rules of the Court of Federal Claims "provides for judgment on the administrative record."  *Huntsville Times Co. v. United States*, 98 Fed. Cl. 100, 104 (2011).  Rule

52.1(c) was "designed to provide for trial on a paper record, allowing fact-finding by the trial court." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005).

This Court may set aside a contract award if: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). "When a challenge is brought on the second ground, the disappointed bidder must show 'a clear and prejudicial violation of applicable statutes or regulations.'" *Id.* at 1333. "[D]e minimis errors do not require the overturning of an award." *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996). "De minimis errors are those that are so insignificant when considered against the solicitation as a whole that they can safely be ignored and the main purposes of the contemplated contract will not be affected if they are." *Id.* (internal quotation marks omitted) (quoting *Andersen Consulting v. United States*, 959 F.2d 929, 935 (Fed. Cir. 1992)). A bid protest plaintiff must establish alleged "errors in the procurement process significantly prejudiced [it]" by showing "there was a 'substantial chance' it would have received the contract award but for the errors." *Bannum, Inc.*, 404 F.3d at 1353.

### 3.  Permanent Injunction

When deciding whether a permanent injunction is warranted,

> a court considers: (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

*PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004).

### B.  Analysis

Plaintiff challenges the Agency's contract award to intervenor on two primary grounds. First, plaintiff claims the Agency "violated the FAR by evaluating proposals inconsistently with the Solicitation's evaluation scheme." Pl.'s MJAR at 11. Second, plaintiff claims the Agency "perform[ed] a flawed best value trade-off" because: "the SSA's trade-off decision was based on an evaluation inconsistent with the Solicitation;" "the Agency essentially conducted a lowest-price technically acceptable procurement rather than a best value trade-off;" and "the SSA insufficiently documented its purported best value decision." *Id.* at 11, 16.

In response, the government argues the Agency's "evaluation of the technical capability factor and its subfactors was consistent with the RFQ's evaluation scheme and was rational." Def.'s MJAR at 12. The government also asserts plaintiff "fails to demonstrate any error" in the Agency's best value trade-off decision. *Id.* at 15. In the same vein, intervenor argues "the agency did not apply unequal weight to the Factor 1, technical capability, subfactors." Intervenor's MJAR at 15. In addition, "the Agency's best value determination was reasonable." *Id.* at 25.

### 1.   Whether the Agency Equally Weighed Subfactors under Factor 1

Plaintiff first argues the Agency violated FAR 8.405-3 because it did not conform to the Solicitation's evaluation scheme by not equally weighing the subfactors under Factor 1 Technical Capability. Pl.'s MJAR at 12–15. The RFQ provided each sub-factor under Factor 1 is "of equal weight." AR at 128. FAR 8.405-3(b)(1)(ii)(C) states the contracting officer "[s]hall ensure all quotes received are fairly considered and award is made in accordance with the basis for selection in the RFQ." Plaintiff points to the SSA Award Decision where, conducting the best value trade-off analysis, the SSA states "[a]lthough [plaintiff] had a slight advantage in Subfactor A and was superior in Subfactor E, the Government views the enhanced benefits associated with [intervenor's] financial capability (Subfactor C) as essentially equal to [plaintiff's] advantages in terms of benefit to the government." AR at 1082. Plaintiff therefore argues this statement "translates to the Agency not giving equal weight to the subfactors by giving more weight to Subfactor C and less weight to both Subfactor A and Subfactor E." Pl.'s MJAR at 14 (emphasis omitted).

In response, the government argues, "CBP's evaluation of the technical capability factor and its subfactors was consistent with the RFQ's evaluation scheme and was rational." Def.'s MJAR at 12. The government asserts that plaintiff "errs in contending that, because the subfactors were equally weighted, the SSA was required to (1) tally up the number of subfactors in which each offeror 'prevailed'; and (2) determine that [plaintiff's] proposal was technically superior because [plaintiff] purportedly 'prevailed' in two subfactors, whereas [intervenor] 'prevailed' in one subfactor." Id. (citing Pl.'s MJAR at 14–15). In so explaining, the government quotes the GAO decision, where it reasoned, "[t]he fact that an agency's source selection decision turns on an evaluation consideration that is designated as equally—or even less—important is unobjectionable since there is no requirement that the key award discriminator also be the most heavily weighted evaluation consideration." Id. at 9 (quoting AR at 2278) (internal quotation marks omitted).

Intervenor responds, arguing when determining which proposal presented the best value to the government, "the SSA reasonably considered not only the number of subfactors on which an offeror prevailed, but also the magnitude of the comparative advantages and disadvantages by which the offeror prevailed on each of the subfactors." Intervenor's MJAR at 15. Further, intervenor contends plaintiff's "'substitute' evaluation methodology . . . is not contained in the Solicitation, and . . . is fundamentally unreasonable because it only considers the number of subfactors on which an offeror prevailed without considering the amount by which the offeror prevailed on those subfactors." Id. at 17. Intervenor additionally argues "the SSA's determination does not mean that the agency gave more weight to subfactor C than to the other factors. Rather, it simply means that, just as [plaintiff] was a 'stronger' Superior, under subfactor A, similarly, [intervenor] was a 'stronger' Superior, under subfactor C, and overall the advantages balanced out." Id. at 21. Once the advantages balanced out, "[t]he SSA's determination that the two offerors were essentially equal for factor 1 is clearly reasonable." Id. Lastly, the SSA's judgment "that [plaintiff's] advantages in subfactor A and E were balanced out by [intervenor's] advantages in subfactor C . . . does not require subfactor C be given more weight and it was not." Id. at 24.

"Procurement officials have substantial discretion to determine which proposal represents the best value for the government." *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996). "When technical evaluation errors are alleged, those technical ratings fall within a category of 'discretionary determinations of procurement officials that a court will not second guess.'" *iAccess Techs., Inc. v. United States*, 143 Fed. Cl. 521, 527 (2019) (quoting *E.W. Bliss Co.*, 77 F.3d at 449). The Federal Circuit has stated adjectival ratings "are not subject to a mathematical calculation." *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 909 n.6 (Fed. Cir. 2013). Additionally, as this Court has observed, "[t]he process of making a 'best value' decision is not merely an exercise in adding up strengths and weaknesses, but a comprehensive comparative analysis that necessarily is influenced by the procurement official's expertise." *Coastal Int'l Sec., Inc. v. United States*, 93 Fed. Cl. 502, 550–51 (2010) (citing *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004)).

This Court considered an analogous argument to plaintiff's in *Plasan North America v. United States*, 109 Fed. Cl. 561 (2013), *appeal dismissed*, Fed. Cir. No. 13-5071 (May 8, 2013). In that case, the plaintiff similarly argued the agency placed greater weight on one subfactor, despite the solicitation's requirement that the subfactors be given equal weight. *Id.* at 577. The plaintiff was "slightly superior" in the Quality of Items/Delivery Performance subfactor, while the intervenor-awardee was "slightly superior" in the Experience subfactor. *Id.* The agency determined the intervenor-awardee's superiority "trump[ed] the slight superiority" of the plaintiff. *Id.* This Court rejected the plaintiff's argument that the agency unequally weighted the subfactors and emphasized, "[i]t is well established that adjectival ratings are merely a guide." *Id.* (citing *Hyperion Inc. v. United States*, 92 Fed. Cl. 114, 119 (2010)). This Court further explained, "[a]ward to [the intervenor-awardee] did not mean that Experience was weighted more heavily, but rather that [the intervenor-awardee] outperformed [the plaintiff] on Experience by a *greater magnitude* than [the plaintiff] outperformed [the intervenor-awardee] on Quality of Items/Delivery Performance. This is perfectly reasonable, and consistent with the solicitation." *Id.* (emphasis added).

In this case, the Solicitation provided that Factor 1, the most important factor, comprised five equally-weighted subfactors. AR at 128. The SSA recognized in his best value determination, "the sub-factors . . . were of equal weight." *Id.* at 1081. The SSA also recognized "the offerors had equal adjectival ratings for the sub-factors," which led him to "view them as essentially technically equal in terms of benefits to the government because no combination of strengths or benefits proposed surpassed the other." *Id.* at 1082. The Solicitation only provided for one award; this required the SSA to choose one proposal over another. The SSA recognized plaintiff "had a slight advantage for sub-factor A" because it "proposed its [XXX] of facilitating open market home sale transactions compared to [intervenor's] [XXX][, and] . . . [w]ith respect to managing sub-operations, [plaintiff] had a slight advantage by being more expansive." *Id.* The SSA also noted plaintiff "was superior in sub-factor E" because it "proposed relatively higher number mechanisms for securing [Personally Identifiable Information] data when compared to [intervenor's] approach under the sub-factor." *Id.* Intervenor, however, "was superior in sub-factor C" because its "approach showed a *substantial comparative advantage* over [plaintiff] regarding financial capability and resources to fund aspects of the relocation services requirement that would require financial outlays from the contractor." AR at 1082.

Since the SSA determined the proposals were "technically equal" on the most important factor, the SSA had to choose a discriminator to distinguish between the proposals, especially one that provided best value to the government. *Id.*

Despite requiring the subfactors be given equal weight, nothing in the RFQ prevents the Agency from considering the magnitude by which a given offeror's proposal is superior to another proposal. *See Tyler Constr. Grp. v. United States*, 570 F.3d 1329, 1333 (Fed. Cir. 2009) ("[T]he proper inquiry is not whether the FAR authorizes [a method of procurement], but whether there is any statutory or regulatory provision that precludes [it]."). Moreover, these subfactors fell under Factor 1, Technical Capability. Procurement officials have significant discretion when evaluating offerors' technical capability, especially in a best value procurement. *See E.W. Bliss Co.*, 77 F.3d at 449. The SSA therefore had the discretion—and duty—to analyze one offeror's superiority over another, especially their technical capabilities to perform the contract. The SSA acknowledged the proposals were "technically equal," but properly looked beyond the adjectival ratings to analyze the nuances of each proposal's strengths and weaknesses. AR at 1082.

The SSA's determination that the proposals were "technically equal" falls within the "category of 'discretionary determinations of procurement officials that a court will not second guess.'" *iAccess Techs., Inc.*, 143 Fed. Cl. at 527 (quoting *E.W. Bliss Co.*, 77 F.3d at 449); *see also IBM Corp. v. United States*, 101 Fed. Cl. 746, 761 (2011) ("An SSA's finding that certain proposals are technically equal is entitled to 'great weight.'"). The SSA had the discretion to make a best value judgment concerning the proposals' technical advantages, and that judgment necessarily involved considering the magnitude of the strengths, not just the quantity of strengths. *See Glenn Def. Marine*, 720 F.3d at 909 n.6 (stating adjectival ratings "are not subject to a mathematical calculation"); *Coastal Int'l Sec., Inc.*, 93 Fed. Cl. at 550–51 ("The process of making a 'best value' decision is not merely an exercise in adding up strengths and weaknesses, but a comprehensive comparative analysis that necessarily is influenced by the procurement official's expertise.") (citing *Galen Med. Assocs.*, 369 F.3d at 1330). The weight given to intervenor's Subfactor C versus plaintiff's Subfactors A and E was not outcome determinative because the SSA considered the proposals "technically equal" under Factor 1. When making the award decision, price ultimately became the decisive discriminator due to the 15% price difference between the proposals, not five subfactors under Factor 1. *See* AR at 1082–83 (acknowledging technical equality, but determining to the extent plaintiff's proposal was superior, it was not worth the price premium over intervenor's technically equal proposal).

The Court finds plaintiff's argument that the Agency failed to equally weigh the subfactors virtually indistinguishable from that of the plaintiff in *Plasan North America*. There, this Court found the agency's determination that the awardee's superiority in one equally-weighted subfactor outweighed the plaintiff's superiority in another subfactor. *Plasan N. Am., Inc.*, 109 Fed. Cl. at 577. Just as in that case, the Agency here had the discretion to consider the magnitude of superiority when comparing the proposals. Accordingly, the Court holds the Agency's evaluation of Factor 1's five equally-weighted subfactors was reasonable and in accordance with the Solicitation.

## 2. Whether the Agency Conducted a Flawed Best Value Trade-Off Analysis

Plaintiff next argues the Agency conducted a flawed best value trade-off analysis because:  (1) the evaluation was "tainted" by the unequally weighted subfactors for Factor 1; (2) the Agency in effect "conducted a lowest-price technically acceptable procurement rather than a best value trade-off;" and (3) the SSA did not sufficiently document its best value trade-off decision.  Pl.'s MJAR at 16.  First, plaintiff explains, "[b]y violating the equal-weight requirement, the SSA managed to hold ARC and the Awardee as 'technically equal' for Factor 1," and "the Agency used its 'technically equal' rating determination for Factor 1—the most important factor—to justify increasing the importance of price because it had (impermissibly) reduced the 'difference in technical ratings (Factor 1 and 2).'"  *Id.* at 17 (quoting AR at 1082). Consequently, plaintiff asserts, "once the Agency arrived at its best value trade-off decision point, it should have viewed [plaintiff] as prevailing on two factors, rather than one."  *Id.* Further, plaintiff maintains the Agency effectively conducted a lowest-price technically acceptable procurement, instead of the best value trade-off the Solicitation required, by "minimiz[ing] the differences between proposals to elevate the relative importance of price."  *Id.* at 18–19.  In other words, by finding intervenor's past performance "[s]atisfactory and demonstrat[ing] that [intervenor] can successfully perform this effort," "the SSA found the Awardee's proposal technically acceptable and at the lowest price."  *Id.* at 23.  Finally, plaintiff highlights the SSA's determination that intervenor's "overall price is lower than [plaintiff's] overall price, and [the SSA did] not find that [plaintiff's] more favorable past performance merits a price premium."  AR at 1082–83.  Based on this language, plaintiff argues the SSA only included a bare, conclusory statement, insufficiently documenting the Agency's best value determination.  *Id.* at 24.

The government responds by arguing the Agency's best value determination was rational. First, "[b]ecause the SSA's evaluation of Factor 1 was consistent with the terms of the RFQ, there was no 'taint' to the best value trade-off decision, as [plaintiff] contends."  Def.'s MJAR at 16.  Next, the government argues the Agency did not minimize the differences between the proposals for either Factor 1 or Factor 2 because:  (1) the SSA found the offerors were technically equal under Factor 1; and (2) plaintiff only submitted one relevant contract for Factor 2, past performance, when the RFQ required three relevant contracts.  *Id.* at 17–20.  The government then indicates although the SSA credited plaintiff for its more relevant past performance, both offerors "demonstrated that they could successfully perform the work under the contract," and "there was not a significant difference in the offerors' technical ratings – which made price an important consideration."  *Id.* at 22.  This did not transform the best value trade-off into a lowest-price technically-acceptable procurement.  Lastly, the government maintains the SSA sufficiently documented the best value determination because "the SSA undertook a comprehensive comparison of the offerors" and "reasonably explained his thought process in the trade-off analysis."  *Id.* at 24.

The intervenor similarly responds by arguing the Agency's best value determination was reasonable.  First, "the SSA did not apply unequal weights to the various subfactors when performing his analysis."  Intervenor's MJAR at 25.  Next, objecting to plaintiff's contention that the SSA effectively conducted a lowest-price technically-acceptable procurement, intervenor argues, "the plain language of the [Source Selection Decision Document] clearly establishes that the SSA traded off [plaintiff's] superior past performance against its cost premium," a

determination intervenor maintains was "eminently reasonable." *Id.* at 39–40.  Lastly, intervenor emphasizes the thoroughness of the SSA's best value determination, as well as the FAR's requirement only for "minimum documentation" to award a BPA to a Federal Supply Schedule contract holder.  *Id.* at 42 (quoting FAR 8.405-3(a)(7)).

> ### i. Whether the best value trade-off was based on an evaluation inconsistent with the Solicitation

When a contract is "to be awarded based on 'best value,' the contracting officer ha[s] even greater discretion than if the contract were to [be] awarded on the basis of cost alone." *Galen Med. Assocs.*, 369 F.3d at 1330 (citing *E.W. Bliss Co.*, 77 F.3d at 449).  Moreover, "[t]he greater the discretion granted to a contracting officer, the more difficult it will be to prove the decision was arbitrary and capricious."  *Id.* (quoting *Burroughs Corp. v. United States*, 617 F.2d 590, 597 (Ct. Cl. 1980)).  "Where agency officials reasonably and properly exercise their discretion when conducting a best value analysis, the Court will not disturb an agency award." *Blackwater Lodge & Training Ctr., Inc. v. United States*, 86 Fed. Cl. 488, 514 (2009) (citing *E.W. Bliss Co.*, 77 F.3d at 449).

The RFQ stated, "[t]he Government may also award to other than the highest technically rated quote if the Government determines that a price premium is not warranted." AR at 128.  It also provided, "[t]he importance of price will increase as the difference in technical ratings . . . between the Offerors decreases." *Id.*  The SSA gave both offerors "good" ratings under Factor 1, the most important factor, and gave both offerors "satisfactory" ratings under Factor 2, the next most important factor.  Given both proposals were technically equal, price understandably increased in importance to the SSA's best value determination.  For the same reasons previously discussed in Section II.B.1, the Court finds the Agency adhered to the RFQ's evaluation scheme in evaluating the proposals under Factor 1's five equally-weighted subfactors.  Since intervenor demonstrated it would be able to successfully perform the contract at a lower price, the SSA's decision to award intervenor the contract was rational.  Accordingly, the Court finds the Agency's best value trade-off was reasonable.

> ### ii. Whether the agency conducted a Lowest Price Technically Acceptable procurement rather than a Best Value Trade-Off

The Court of Federal Claims has reiterated, "an agency may select a lower-priced, technically-lower-rated proposal in a best value procurement even when technical factors have been identified as being of greater importance than price, where it reasonably concludes that the technically superior proposal does not warrant a price premium." *Bahrain Mar. & Mercantile Int'l BSC (C) v. United States*, 118 Fed. Cl. 462, 481 (2014) (citing *Mil-Mar Century Corp. v. United States*, 111 Fed. Cl. 508, 553 (2013)); *Allied Tech. Grp., Inc. v. United States*, 94 Fed. Cl. 16, 49 (2010); *Afghan Am. Army Servs. Corp. v. United States*, 90 Fed. Cl. 341, 360 (2009).  The RFQ in this procurement similarly stated, "the Government may . . . award to other than the highest technically rated quote if the Government determines that a *price premium is not warranted*." AR at 128 (emphasis added).

- 14 -

Here, both offerors had identical adjectival ratings for Factors 1 and 2, but the difference in price was nearly 15% of the overall contract, or almost $1 million.  Given the SSA's wide discretion in this best value procurement, the Court cannot say the Agency's award to the lower priced technically equal proposal was arbitrary or capricious.  The SSA considered each proposal's strengths and weaknesses beyond the adjectival ratings and determined although plaintiff's past performance was relevant, and thus "superior," that superiority did not warrant the price premium.  That determination did not transform this procurement from best value to lowest-price, technically-acceptable.  "Procurement officials have substantial discretion to determine which proposal represents the best value for the government."  *E.W. Bliss Co.*, 77 F.3d at 449.  The Court finds the SSA properly exercised that "substantial discretion" to determine intervenor's proposal—while also the lower priced and technically acceptable—represented the best value to the Agency.

### iii.    Whether the SSA sufficiently documented the best value trade-off

"[I]t is well settled that an agency must explain its action with sufficient clarity to permit 'effective judicial review.'"  *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005) (quoting *Camp v. Pitts*, 411 U.S. 138, 142–43 (1973)).  "The sufficiency of the documentation of a finding of technical superiority or equality depends on the record supporting the finding; for example, conclusory statements of superiority or equality are insufficient when the record reflects differences in technical merit between a protestor's proposal and the selected proposal."  *IBM Corp.*, 101 Fed. Cl. at 761.

"This is not a case in which an SSA concluded without explanation that a higher-priced and technically superior proposal was or was not worth the premium."  *Id.* at 764.  The SSA's comparative analysis for each factor and subfactor spanned over eight pages.  *See* AR at 1072–1081.  The SSA then used almost two pages to thoroughly explain the best value trade-off decision.  *See id.* at 1081–83.  Plaintiff takes a single statement out of its greater context by arguing the SSA only made a "bare statement" that plaintiff's proposal was not worth the 15% price premium.  Pl.'s MJAR at 24.  In reality, the SSA went into great detail evaluating the strengths each proposal represented, but concluded:

> After accomplishing the integrated assessment, considering the established and stated order of importance for the evaluation factors in accordance with the RFQ, it is my determination that [intervenor's] proposal offers the best value for fulfilling the Government's requirements.  [Intervenor's] overall price is lower than [plaintiff's] overall price, and I do not find that [plaintiff's] more favorable past performance merits a price premium of $900,712.50.  [Plaintiff's] proposal has not demonstrated any number of strengths or benefits (including better past performance) that warrant the Government paying this price premium estimated to be 15%.

> [Intervenor's] proposal yields confidence that they will successfully perform the work under the contract.  I have determined that [intervenor's] proposal is a fair and reasonable price and awarding the Blanket Purchase Agreement to them is in the best interest of the Government.

AR at 1082–83. The SSA's best value determination was not conclusory, nor did it conclude without explanation that plaintiff's proposal was not worth the price premium. Based on this record, the Court finds the SSA sufficiently documented the best value determination by thoroughly explaining why intervenor's proposal represented the best value to the government.

This record does not show the Agency's contract award to intervenor was arbitrary or capricious. The SSA considered the proposals "essentially technically equal." AR at 1082. The SSA's responsibility, then, was to identify which of the two proposals presented the best value to the government. It was reasonable for the SSA to determine intervenor's technically equal proposal presented the best value because it demonstrated an ability to successfully perform the required work at a lower price—a determination which the RFQ permitted. Based on this record, the Court cannot say the Agency's decision was arbitrary or capricious or otherwise not in accordance with law.

### 3.  Permanent Injunction

As previously stated, the Court considers the following factors when determining whether to issue a permanent injunction: "(1) whether . . . the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC*, 389 F.3d at 1228–29. Turning first to factor one, plaintiff is not entitled to injunctive relief because plaintiff does not prevail on the merits. The Court therefore does not reach the remaining prongs of the test for a permanent injunction. *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 357 n.32 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) ("Absent success on the merits, the other factors are irrelevant.").

### 4.  Supplementation of the Administrative Record

Plaintiff moved to supplement the administrative record with two documents: (1) a declaration of plaintiff's director; and (2) plaintiff's incumbent contract. *See* Pl.'s Mot. to Suppl. AR, Exs. A–B. "Plaintiff offers the attached exhibits only to assist the Court in assessing the irreparable harm and balance of hardship factors associated with determining [whether] a permanent injunction should issue." *Id.* at 1.

"[T]he parties' ability to supplement the administrative record is limited." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009). Plaintiff only seeks to supplement the administrative record to bolster its argument regarding the second and third factors for a permanent injunction: irreparable harm and balance of the hardships. Since the Court finds plaintiff is not entitled to injunctive relief based on a failure to succeed on the merits under the first factor, any supplementation to the administrative record directed to the remaining factors provides no further value to the Court's decision-making process. Accordingly, the Court denies plaintiff's motion to supplement the administrative record as moot.

## III.  Conclusion

The administrative record in this case does not establish the Agency's evaluation of the proposals or decision to award the contract to intervenor was arbitrary, capricious, or otherwise not in accordance with law.  For the foregoing reasons, plaintiff's motion for judgment on the administrative record is **DENIED**, and the government's and intervenor's cross-motions for judgment on the administrative record are **GRANTED**.  Plaintiff's motion to supplement the administrative record and motion to withdraw its motion for preliminary injunction are **DENIED AS MOOT**.  The Clerk is directed to enter judgment in accordance with this disposition.

      **IT IS SO ORDERED.**

                              s/ Ryan T. Holte
                              RYAN T. HOLTE
                              Judge